UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-20994-CIV-LENARD/O'SULLIVAN

DEBORAH ZEICHNER AND STEVEN
ZEICHNER,
    Plaintiffs,
v.

USAA CASUALTY INSURANCE
COMPANY,
    Defendant.
_____/

## ORDER

THIS MATTER is before the Court on the Defendant's Motion to Strike Affidavit of Steven Zeichner (DE# 49, 11/5/13) and the Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of Wissam Naamani (DE# 51, 11/5/13).

## BACKGROUND

The plaintiffs are homeowners who brought a state-court action for breach of contract against their insurance carrier for denying coverage for losses sustained to their residence allegedly "as a result of sinkhole damage." See Amended Complaint (DE# 6-5 at ¶¶ 8-10, 3/26/13) (capitalization omitted). This matter was subsequently removed to the United States District Court for the Southern District of Florida. See Notice of Removal (DE# 1, 3/20/13).

On November 5, 2013, the defendant moved to strike two affidavits filed in opposition to its summary judgment motion. See Defendant's Motion to Strike Affidavit of Steven Zeichner (DE# 49, 11/5/13); Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of Wissam Naamani (DE# 51, 11/5/13). The plaintiffs filed their responses to the instant motions on November 20, 2013 and November 22,

2013. See Plaintiffs' Response in Opposition to Defendant's Motion to Strike the Affidavit of Steven Zeichner (DE# 54, 11/20/13); Plaintiffs' Response in Opposition to Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of Wissam Naamani (DE# 55, 11/22/13). No replies were filed. This matter is ripe for adjudication.

## ANALYSIS

**1.   Defendant's Motion to Strike Affidavit of Steven Zeichner (DE# 49, 11/5/13)**

The defendant seeks to strike the Affidavit of Steven Jay Zeichner (DE# 48-6, 10/31/13) on the ground that Mr. Zeichner is not an expert and is not "qualified to testify as to the geological make-up of [the ground] underneath the subject property." Defendant's Motion to Strike Affidavit of Steven Zeichner (DE# 49 at 3, 11/5/13). Mr. Zeichner is a plaintiff in the instant action and has resided on the property that is the subject of this litigation since 1991. See Affidavit of Steven Jay Zeichner (DE# 48-6 at ¶3, 10/31/13). The defendant does not identify by paragraph the portions of Mr. Zeichner's affidavit it finds objectionable, thus the undersigned will construe the instant motion as a motion to strike the entire affidavit. Nonetheless, it is clear from the defendant's motion that the defendant is mostly concerned with paragraph 10 of Mr. Zeichner's affidavit wherein he attests as follows:

> 10.   **I can say with absolute certainty that whatever the anomaly is along the middle area along the south wall of the residence is NOT an old septic tank.** Wingerter Laboratories' guess that it "could be an old septic tank" is absolutely wrong. My Property has only had one septic tank, the same one at present, and it has always been located in the front lawn which is on the southwest side of the Property.

Affidavit of Steven Jay Zeichner (DE# 48-6 at ¶10, 10/31/13) (emphasis added).

Rule 56(c)(4) of the Federal Rules of Civil Procedure states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and **show that the affiant or declarant is competent to testify on the matters stated**." Fed. R. Civ. P. 56(c)(4) (emphasis added).

Mr. Zeichner is free to attest based on his personal knowledge as the owner and a continuous resident of the property that he never installed or hired anyone to install a septic tank beneath the middle area along the south wall of the residence from 1991, when he acquired the property, to the present. However, Mr. Zeichner was not the original owner of the residence and has no personal knowledge as to whether someone else installed a septic tank in this area <u>before</u> he acquired ownership of the property.[1] Thus, the Affidavit of Steven Jay Zeichner (DE# 48-6 at ¶3, 10/31/13) is **STRICKEN** to the extent that Mr. Zeichner seeks to conclusively establish that there is no second septic tank beneath the middle area along the south wall of the residence.[2] The remaining portions of the affidavit are not stricken. Mr. Zeichner, as the homeowner,

---

[1] The plaintiffs argue that it is "ridiculous" to suggest that someone would have installed another septic tank during the three-year period after the property was built and before the plaintiffs acquired it or that someone would install a septic tank in a vacant lot. See Plaintiffs' Response in Opposition to Defendant's Motion to Strike the Affidavit of Steven Zeichner (DE# 54 at 4, 11/20/13). However improbable, Mr. Zeichner is not competent to attest, much less "with absolute certainty," that someone did not install another septic tank <u>before</u> he acquired the property. See Affidavit of Steven Jay Zeichner (DE# 48-6 at ¶10, 10/31/13).

[2] Conversely, Wingerter Laboratories' letter, stating that "an anomaly appears to be present, at a depth of four to eight feet below the current land surface . . . [which] could be an old septic tank," alone is also insufficient to conclusively establish that there is a septic tank beneath the middle area along the south wall of the residence. See Wingerter Laboratories Letter (DE# 42-1 at 100, 10/7/13).

3

may attest to factual matters related to his property based on his own personal knowledge, such as the fact that "[t]he front door of [his] property faces southwest" and that the "southeast/south side of [his p]roperty consists of a solid wall with windows and is where the game room, two bedrooms and a bathroom are located." See Affidavit of Steven Jay Zeichner (DE# 48-6 at ¶7, 10/31/13). Based on the foregoing, the Defendant's Motion to Strike Affidavit of Steven Zeichner (DE# 49, 11/5/13) is **GRANTED in part and DENIED in part**.

2.  **Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of Wissam Naamani (DE# 51, 11/5/13)**

Wissam Naamani is the licensed professional engineer who inspected the plaintiffs' property on May 11, 2010. See Affidavit of Wissam Naamani (DE# 48-1, 10/31/13). The defendant seeks to strike paragraphs 25, 27 through 28 and 30 through 32 of Mr. Naamani's affidavit (DE# 48-1) on the ground that these paragraphs are contradicted by Mr. Naamani's deposition testimony. See Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of Wissam Naamani (DE# 51, 11/5/13).

"The law in this circuit is that a party cannot give 'clear answers to unambiguous questions' in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987) (quoting Van T. Junkins and Assoc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984)). "When this occurs, the court may disregard the affidavit as a sham." Id.; see also Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir. 2010) ("A court may determine that an affidavit is a sham when it

contradicts previous deposition testimony and the party submitting the affidavit **does not give any valid explanation for the contradiction**.") (citing Van T. Junkins & Assocs, 736 F.2d at 656) (emphasis added). Notably, "this rule [is applied] sparingly because of the harsh effect this rule may have on a party's case." Rollins, 833 F.2d at 1530.

The paragraphs at issue in Mr. Naamani's challenged affidavit can be grouped into two categories: sinkhole/sinkhole activity and subterranean voids. The undersigned will address these in turn.

### a.  Testimony Concerning "Sinkholes" and "Sinkhole Activity" (Paragraphs 25, 27 through 28)

The defendant argues that "Mr. Naamani testified numerous times during his deposition that there was no sinkhole activity at the subject property as defined by the statute and the policy. Now, he attempts to file an affidavit concluding that he in fact found sinkhole activity at this property." Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of Wissam Naamani (DE# 51 at 6, 11/5/13). The plaintiffs respond that "any testimony which may appear to be contradictory with [Mr. Naamani's] Affidavit was a result of his confusion of the statutory definitions of "sinkhole" and "sinkhole activity" during his deposition" See Plaintiffs' Response in Opposition to Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of Wissam Naamani (DE# 55 at 1-2, 11/22/13).

During his deposition, Mr. Naamani testified that he found no "sinkhole activity" on the plaintiffs' property. Specifically, Mr. Naamani testified that he was able to "rule

out" sinkhole activity at the subject property based on soil borings[3] and his investigation:

> Q. Based on your borings and your investigation at this property, were you able to **rule out sinkhole activity** at this property?
>
> [Plaintiffs' counsel]: Form.
>
> A. **Correct.**

Deposition of Wissam Naamani (DE# 42-1 at 30, 10/7/13) (emphasis added). The defendant's counsel also presented Mr. Naamani with a copy of a report prepared by the defendants' expert, Pepper Engineering Group, and Mr. Naamani agreed with the report's conclusion that there was no sinkhole activity on the property:

> Q. . . . It says, "The **analysis conducted was of sufficient scope to eliminate sinkhole activity as the cause of reported damage** within a reasonable degree of professional probability."
>
> Do you agree with that statement?
>
> A. Yes.

Id. at 31 (emphasis added).

The plaintiffs now seek to introduce the affidavit of Mr. Naamani in order clarify some alleged confusion on Mr. Naamani's part concerning the statutory definitions of "sinkhole" and "sinkhole activity." Mr. Naamani's affidavit states the following:

> 25. I was then asked [during the deposition] whether I was able to rule out sinkhole activity at the Property and I testified that I was because I was referring to statutory definition of "sinkhole."

\*\*\*

---

[3] Mr. Naamani's affidavit defines a "soil boring" as a "standard penetration test[ ] by hand with the assistance of a drilling crew." Affidavit of Wissam Naamani (DE# 48-1 at ¶ 9, 10/31/13). Mr. Naamani performed four soil borings on the plaintiffs' property. See Deposition of Wissam Naamani (DE# 42-1 at 29, 10/7/13).

> 27. I gave what appears to be inconsistent testimony in my deposition because I was referring to the statutory definition of "sinkhole" when I previously testified that there was no sinkhole activity present at the Property.
>
> 28. On redirect examination, I cleared up the discrepancy when I read the statutory definition of "sinkhole" in §627.706(2)(b) (2010) into the record and stated, "That is the definition I was looking for." Ex. 3, p. 49, ln. 6.

Affidavit of Wissam Naamani (DE# 48-1 at ¶¶ 25, 27-28, 10/31/13).

The Eleventh Circuit has stated that "[a] definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986).[4] Moreover, the Eleventh Circuit warned that:

> [t]o allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case, the affiant) was stating the truth. Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact.

Id. at 953-54.

The Florida Statutes provide different definitions for the terms "sinkhole" and "sinkhole activity." See Fla. Stat. § 627.706(2)(h) - (i). A "sinkhole" as defined by section 627.706(2)(h) is "a landform **created by subsidence of soil, sediment, or rock as underlying strata are dissolved by groundwater.**" Fla. Stat. § 627.706(2)(h)

---

[4] Whether Mr. Naamani's affidavit and deposition testimony are sufficient to create a genuine issue of material fact is not an issue before the undersigned. The issue before the undersigned is a narrow one: whether certain paragraphs of Mr. Naamani's affidavit should be stricken under the sham affidavit rule.

(emphasis added). The term "sinkhole activity" is defined as a "settlement or systematic weakening of the earth supporting the covered building only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids **created by the effect of water on a limestone or similar rock formation**." Fla. Stat. § 627.706(2)(i) (emphasis added).

In the instant case, Mr. Naamani's deposition testimony is at times confusing and even counsel for the defendant acknowledged during the deposition some inconsistency in Mr. Naamani's testimony:

> Q. Sir, [the plaintiffs' counsel] just asked you some questions in regards to the definition of sinkhole activity and sinkhole loss in the property. **It seems that you changed your conclusion from what you told me earlier.**
>
> A. No.

Deposition of Wissam Naamani (DE# 42-1 at 47, 10/7/13) (emphasis added). Mr. Naamani has given an explanation for the apparent contradictions between his affidavit and deposition testimony. He attests that he was relying on the statutory definition of "sinkhole" when he ruled out the possibility of the presence of "sinkhole activity" on the plaintiffs' property. Affidavit of Wissam Naamani (DE# 48-1 at ¶ 25, 10/31/13). The discrepancies in Mr. Naamani's testimony as explained in paragraphs 25, 27 and 28 of his affidavit are not the types of transparent shams that warrant the application of the sham affidavit rule. See Poitevint v. United Recovery Sys., LP, 899 F. Supp. 2d 1230, 1238 (N.D. Fla. 2012) (declining to strike affidavit as sham and noting that "[c]ourts have emphasized that an affidavit should not be disregarded merely because it is 'not a paradigm of cogency or persuasiveness' as long as it is not a 'transparent sham.'")

(quoting Choudhry v. Jenkins, 559 F.2d 1085, 1090 (7th Cir.1977)).

The defendant's request to strike paragraphs 25, 27 and 28 are **DENIED**. These paragraphs provide an explanation as to why Mr. Naamani testified that he had ruled out "sinkhole activity" at the property. According to Mr. Naamani's explanation, he was relying on the statutory definition of "sinkhole" rather than the statutory/policy definition of "sinkhole activity." Affidavit of Wissam Naamani (DE# 48-1 at ¶ 25, 10/31/13). Mr. Naamani's explanation, however, does not negate or explain other portions of his deposition testimony where he was not asked about the presence of "sinkhole activity," but rather counsel read the policy definition and he responded accordingly. For example:

> Q.  In your opinion, did you find any subterranean voids created by the affected [sic] water on limestone or similar rock formation at this property during your testing?
>
> A.  The answer is no.

Deposition of Wissam Naamani (DE# 42-1 at 49, 10/7/13). Although counsel's question tracked the language of the "sinkhole activity" definition in both the statute and the policy,[5] he did not use the word "sinkhole" or "sinkhole activity" in the question. Thus, any confusion Mr. Naamani may have had regarding the words "sinkhole" or "sinkhole activity" as defined by the statute has no bearing on the above response.

In sum, while the Court may consider Mr. Naamani's explanation for deposition questions that used the words "sinkhole" or "sinkhole activity," it may also consider Mr. Naamani's deposition responses to questions that tracked the wording of the

---

[5] The statutory definition of "sinkhole activity" is very similar to the policy definition of "sinkhole activity." Compare Fla. Stat. § 627.706(2)(i) with USAA Policy (DE# 42-1 at 134, 10/7/13).

9

statutory/policy definition, but did not use the words "sinkhole" or "sinkhole activity."

### b. Testimony Concerning Subterranean Voids (Paragraphs 30, 31 and 32)

The defendant also seeks to strike the paragraphs in Mr. Naamani's affidavit concerning subterranean voids. Paragraphs 30 through 32 state as follows:

> 30. I also testified that I did not find any subterranean voids during my testing but I was referring to a traditional "void" and not to the naturally-occurring voids in limestone, sandstone or similar rock formations. Ex. 3, p. 49, ln. 21-25. I testified previously that the Property would not have settled if not for the presence of subterranean voids. Ex. 3, p. 41, ln. 3-4. Further, I did not conduct any GPR testing at the Property which is specifically done to detect subterranean voids. See Ex. 2.
>
> 31. The only testing I performed as part of the subsidence investigation on May 11, 2010 were the four (4) standard penetration boring tests previously mentioned. See Ex. 2. Each boring sample was "about two inches in diameter." Ex. 3, p. 54, ln. 11. I testified that "I did not detect any subterranean voids **in my soil borings**" but my sample size was too small to make a conclusion about the entire Property without the benefit of GPR testing. Further, my deposition testimony was not referring to the voids which naturally occur in limestone, sandstone or similar rock formations which I detected at an average depth of two-and-a-half feet (2'6") to three-and-a-half feet (3'6") below the existing ground surface under the Property. Finally, my deposition testimony was not referring to the voids that were clearly present due to the observable and quantifiable settlement and resulting structural damage present at the Property. Based on my observations and analysis, voids were clearly present beneath the Property. If they were not present, the Property would not have settled.
>
> 32. My conclusion today is the same as contained in the Dynatech report and the same at my deposition which is that the structural damage of the Property was caused by the settlement of the earth supporting the Property due to the movement of [soil], sediment or rock materials into voids created by the effect of water. Therefore, it is my opinion that "sinkhole activity", as defined in the USAA Policy and § 627.706(2)(d) (2010) was present at the Property.

Affidavit of Wissam Naamani (DE# 48-1 at ¶¶ 30-32, 10/31/13) (emphasis in original).

The defendant seeks to strike Mr. Naamani's affidavit testimony concerning

subterranean voids because "Mr. Naamani clearly testified there could have been **voids in the soil** due to the structural damage, but that he did not find **subterranean voids** as defined in the definition of sinkhole activity." Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of Wissam Naamani (DE# 51 at 4, 11/5/13) (emphasis added).

The plaintiffs argue that "[t]he fact that [Mr. Naamani] did not find any voids in his **two-inch wide soil borings** does not lead to the conclusion, as Defendant would like this Court to believe, that there were no subterranean voids beneath the Property." Plaintiffs' Response in Opposition to Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of Wissam Naamani (DE# 55 at 7, 11/22/13) (emphasis in original). The plaintiffs quote Mr. Naamani's affidavit wherein he states that his four soil borings were too small in size to conclude that there were no subterranean voids beneath the entire property without the benefit of GPR testing.[6] Id. (quoting Affidavit of Wissam Naamani (DE# 48-1 at ¶31, 10/31/13).

Paragraph 30 is STRICKEN to the extent Mr. Naamani seeks to establish the existence of subterranean voids beneath the subject property. Mr. Naamani's affidavit states: "I testified previously that the Property would not have settled **if not for the presence of subterranean voids**. Ex. 3, p. 41, ln. 3-4." Affidavit of Wissam Naamani (DE# 48-1 at ¶ 30, 10/31/13) (emphasis added). This statement is not factually accurate. The portion of the deposition cited by Mr. Naamani in his affidavit concerned

---

[6] The term "GPR testing," or ground penetrating radar, is a form of geophysical testing. See Deposition of Wissam Naamani (DE# 42-1 at 22, 55, 10/7/13). It involves the use of a radar that shoots waves into the ground to determine the presence of underground cavities. Id. at 22-23. GPR testing is used to perform sinkhole testing. Id. at 23.

<u>voids in the soil</u>, not subterranean voids:

> Q. Would there have been structural damage if there were **no voids in the earth** supporting the Zeichner residence?
>
> A. Well, **all <u>soils</u> have voids** to a certain degree. If it did not settle, you are saying it would have been no damage. So the fact that it did settle, therefore, there was **some voids in the <u>soil</u>**, correct.

Deposition of Wissam Naamani (DE# 42-1 at 40-41, 10/7/13) (emphasis added).[7] Mr. Naamani cites to no other portions of his deposition where he testified to the existence of subterranean voids beneath the plaintiffs' property. While Mr. Naamani conceded at deposition that the plaintiffs' house would not have settled without <u>voids in the soil</u>, see Deposition of Wissam Naamani (DE# 42-1 at 41), nothing in his deposition testimony confirmed the presence of <u>subterranean</u> voids beneath the subject property. To the contrary, Mr. Naamani testified at deposition that the four soil borings he performed on the property were insufficient to confirm or deny the presence of subterranean voids. <u>Id.</u> at 53-54 (testifying that the borings were approximately two inches in diameter and that there could be voids "right next to where the boring sample was taken"). Mr. Naamani's affidavit states as much: "I did not conduct any GPR testing at the Property which is specifically done to detect subterranean voids." Affidavit of Wissam Naamani (DE# 48-1

---

[7] On redirect, Mr. Naamani agreed that you could have settlement of the property without the presence of <u>subterranean</u> voids:

> Q. Understood. Is it not possible you can have settlement on the ground surface without any subterranean voids in the limestone underneath the surface; is that correct?
>
> A. That is what my testimony is.

Deposition of Wissam Naamani (DE# 42-1 at 50, 10/7/13). Thus, the fact that the plaintiffs' property settled is not evidence of subterranean voids.

at ¶30, 10/31/13). When asked on redirect if he found any <u>subterranean</u> voids, Mr. Naamani's answer was clear:

> Q. In your opinion, did you find any **subterranean** voids created by the affected [sic] water on limestone or similar rock formation at this property during your testing?
>
> A. The answer is no.
>
> ***
>
> Q. Your testimony here today is that you did not find any **subterranean** voids in the limestone at this property; is that correct?
>
> A. Correct. You could read the ground penetrating radar as well to see if there was any subterranean voids by the other firm.

<u>Id.</u> at 49-50 (emphasis added). By his own admission, Mr. Naamani's soil borings of the property were insufficient to confirm the existence of subterranean voids and he did not perform any GPR testing. Thus, Mr. Naamani cannot now testify in his affidavit to the presence of subterranean voids beneath the plaintiffs' property.

Paragraph 31 is not stricken because it consists of factual recitations that are supported, and not contradicted, by Mr. Naamani's deposition testimony. Mr. Naamani is free to opine that "[b]ased on [his] observations and analysis, voids were clearly present beneath the Property," to the extent he is referring to voids in the soil, because that is consistent with his deposition testimony. <u>See</u> Deposition of Wissam Naamani (DE# 42-1 at 40-41, 10/7/13). But for the reasons stated above Mr. Naamani may not testify to the presence of <u>subterranean</u> voids beneath the plaintiffs' property because his boring tests were insufficient to confirm the existence of subterranean voids and he did not conduct GPR testing. <u>See</u> Affidavit of Wissam Naamani (DE# 48-1 at ¶30,

10/31/13) (stating that GPR testing "is specifically done to detect subterranean voids."). Moreover, while Mr. Naamani testified generally to the existence of voids in limestone rocks at his deposition, that is not the same as confirming the existence of subterranean voids. Mr. Namaani's own deposition testimony makes a distinction between voids in the soil and subterranean voids. See Deposition of Wissam Naamani (DE# 42-1 at 45, 10/7/13) (in response to the plaintiffs' counsel's hypothetical, Mr. Naamani could not say whether the voids were voids in the soil or subterranean voids).[8]

---

[8] During Mr. Naamani's deposition, the plaintiffs' counsel presented him with a hypothetical:

> Q. Final question. It's a hypothetical. My home, if I were to leave a hose running at the foundation of my home for a couple of weeks, let's say a month, based on your experience and education, would it be possible for cracks, similar to the ones that appeared at the Zeichner residence, to appear at my property?
>
> A. Likely, yes.
>
> Q. Would you classify that as, using this hypothetical, would I have caused a settlement of the earth supporting my property if I left the water hose running for two months, abutting my foundation?
>
> A. Yes.
>
> Q. Would that settlement have been caused, in this hypothetical, from the movement of solid sediments or rock materials by the water?
>
> A. Yes.
>
> **Q. Would those solid sediments or rock materials have moved into <u>subterranean</u> voids?**
>
> **A. They have moved into voids. Where the voids are, subterranean or just within the soil itself, but everything is possible, yes.**

Id. at 44-45 (emphasis added). Notably, Mr. Naamani makes a distinction between voids in the soil and subterranean voids.

14

The statement in paragraph 32 that -- "'sinkhole activity,' as defined in the USAA Policy and § 627.706(2)(d) (2010) was present at the property" — is also STRICKEN. In their response to the instant motion, the plaintiffs argue that Mr. Naamani did testify that he found "sinkhole activity" as defined by the subject policy:

> Most importantly, Mr. Naamani testified at his deposition that he found "sinkhole activity" at the Property based on that term's statutory (and Policy) definition, his report and his observations [D.E. 42-1, p. 46, lns. 18-25] so for the Defendant to now claim that Mr. Naamani's Affidavit contradicts his deposition testimony evidences Defendant's attempt to accept portions of Mr. Naamani's deposition testimony while ignoring others which do not support its position in this litigation.

Plaintiffs' Response in Opposition to Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of Wissam Naamani (DE# 55 at 2, 11/22/13). The problem with this argument is that at Mr. Naamani's deposition, counsel for the plaintiffs omitted the word "subterranean" when he read the policy definition of "sinkhole activity" to Mr. Naamani:

> Q. Mr. Naamani, one more question as to the definition of **sinkhole activity as stated in the USAA policy**. Based on your report, your observations and your findings, wouldn't you agree that the damage caused to the Zeichner residence was caused by settlement of the earth supporting that residence resulting from movement of solid sediments or rock materials **into voids** created by the effect of water?
>
> [Counsel for the defendant]: Objection.
>
> A. Reading this definition, yes.

Deposition of Wissam Naamani (DE# 42-1 at 46, 10/7/13) (emphasis added).

The omission of the word "subterranean" from the policy definition is an important omission because in the preceding page of the transcript, Mr. Naamani testified that he could not say whether the voids would be voids in the soil or

subterranean voids in response to the plaintiffs' counsel's hypothetical. Id. at 45. Moreover, while Mr. Naamani agreed at deposition that there would have been <u>voids in the soil</u>, his testing did not confirm the presence of subterranean voids beneath the plaintiffs' property. See Deposition of Wissam Naamani (DE# 42-1 at 53, 10/7/13) (stating "I did not detect any subterranean voids in my soil borings."). Thus, Mr. Naamani did not "testif[y] at his deposition that he found 'sinkhole activity' at the Property **based on that term's statutory (and Policy) definition**, his report and his observations" as the plaintiffs claim in their response, <u>see</u> Plaintiffs' Response in Opposition to Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of Wissam Naamani (DE# 55 at 2, 11/22/13) (emphasis added), because Mr. Naamani never confirmed the presence of <u>subterranean</u> voids on the property and counsel for the plaintiffs omitted the word "subterranean" from his question. Both the statute and the policy contain the words "subterranean voids" in their definition of "sinkhole activity." Thus, Mr. Naamani did not and could not have testified that he found "sinkhole activity" on the plaintiffs' property. The remaining portions of paragraph 32 are not stricken. Based on the foregoing, the Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of Wissam Naamani (DE# 51, 11/5/13) is **GRANTED in part and DENIED in part**.

## CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Defendant's Motion to Strike Affidavit of Steven Zeichner (DE# 49, 11/5/13) is **GRANTED in part and DENIED in part** and the Defendant's Motion to Strike Paragraphs 25, 27, 28, 30, 31 and 32 of the Affidavit of

Wissam Naamani (DE# 51, 11/5/13) is **GRANTED in part and DENIED in part**.

**DONE AND ORDERED** in Chambers at Miami, Florida this \_\_18\_\_ day of March, 2014.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Lenard
All counsel of record